E-FILED
Wednesday, 05 December, 2007 04:17:37 PM
Clerk, U.S. District Court, ILCD

# United States District Court

_____ CENTRAL _____ DISTRICT OF _____ ILLINOIS _____

UNITED STATES OF AMERICA

v.

KRISTOPHER M DAVIS

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 07- 7267

FILED
DEC -5 2007
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __2006 through November 14, 2007__ in __Champaign__ County, in the __Central__ District of __Illinois__ defendant:

knowingly and intentionally conspired to distribute cocaine and cocaine base ("crack")

in violation of 21 U.S.C. § 841(a)(1) and 846.

I further state that I am a _____ DEA Task Force Agent _____ and that this complaint is based on the following facts:
                           Official Title

See attached affidavit

Continued on the attached sheet and made a part hereof:   ■ Yes   □ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

December 5, 2007                           at   Urbana, Illinois
Date                                             City and State

David G. Bernthal                              s/David G. Bernthal
U.S. Magistrate Judge                          _____
Name & Title of Judicial Officer               Signature of Judicial Officer

STATE OF ILLINOIS          )
                           ) ss
COUNTY OF CHAMPAIGN        )

## AFFIDAVIT

I, Matthew D. Henson, being first duly sworn, hereby state:

1.  I am an Officer with the Champaign Police Department (CPD) and am currently assigned to the Champaign Narcotics Unit, whose primary objective is to conduct mid-level narcotics investigations. I have been with CPD for approximately six years and assigned to the Champaign Narcotics Unit since September 2003. I was deputized by the DEA as Task Force Officer for this investigation in May 2007.

2.  This affidavit is submitted in support of a complaint charging KRISTOPHER M. DAVIS, a/k/a "KD," year of birth reported as 1983, with conspiracy to distribute cocaine and cocaine base ("crack") in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

3.  I am familiar with the following facts based upon my own personal observation and upon information officially supplied to me by other law enforcement agents.

4.  Since approximately 2002, law enforcement agencies, including the DEA, members of the Champaign, Illinois Police Department, Urbana, Illinois Police Department Street Crimes Unit, and the Champaign County, Illinois Sheriff's Office Street Crimes Unit have conducted an ongoing investigation of an organization, which is believed to be responsible for the distribution of multiple kilograms of cocaine and

1

crack cocaine in the Champaign County, Illinois area. One of the leaders of the organization has been identified as OLAITAN O. FOWOWE, a/k/a MELVIN.

5. Based on information developed during the ongoing investigation, officers have learned that the organization has recruited several persons to assist in the facilitation of this criminal drug conspiracy. These persons have been responsible for renting vehicles which were used to transport cocaine from Chicago, Illinois to Champaign, Illinois; transporting cocaine to Champaign-Urbana, Illinois; transporting currency generated from drug sales back to Chicago, Illinois; renting apartments in the Champaign-Urbana, Illinois area for drug dealers to utilize as their base of operation; and obtaining cellular telephones in their names to prevent law enforcement from being able to track the activities of the hierarchy of this organization.

6. To date, officers have conducted 23 search warrants on residences and vehicles in the Champaign County, Illinois area that are believed to be tied to the organization. Those searches have led to the seizure of five vehicles; approximately 405 grams of cannabis; approximately 1,722 grams of powder cocaine; approximately 928 grams of crack cocaine; eight semi-automatic handguns/revolvers, two of which were previously reported as stolen; and $105,716 in cash.

7. FOWOWE is currently serving an six-year sentence for manufacture/delivery of a controlled substance in the Illinois Department of Corrections at the Crossroads Correctional Center, located at 3210 West Arthington, Chicago, Illinois 60624. Crossroads Correctional Center is a work release center. As part

of his sentence, FOWOWE is allowed to leave the facility at approximately 7:00 a.m. so that he can travel to his place of employment. It is believed that FOWOWE has to return to this facility at approximately 7:00 p.m. every evening. Based on surveillance of FOWOWE by law enforcement officers since October 23, 2007, FOWOWE has no known source of legitimate employment.

8.     Based on information developed in this investigation, officers have learned that the organization has created a master customer telephone list of persons in the Champaign County, Illinois area who purchase crack and powder cocaine. FOWOWE is responsible for directing the organization's street level narcotics dealers and providing them with customers' telephone numbers. FOWOWE has also provided his own cellular telephone numbers to customers so that they could contact him directly should they have any problems with their service. FOWOWE has also provided the customers with new cellular telephone numbers to call to reach the street level dealers.

9.     On December 4, 2003, officers responded to a domestic disturbance call at 312 West Springfield, Apartment 304, Urbana, Illinois. After arriving at the residence, officers made contact with RASHAUD C. HARRELL and were allowed entry in the residence, during which officers observed contraband in plain view. As a result, officers obtained a search warrant for the residence. Officers identified the residents of the apartment as RASHAUD HARRELL and FOWOWE. During the search, officers seized $1,162 in cash, 12.68 grams of crack cocaine, and a Sig Sauer .45 caliber Model P220 handgun and loaded magazine, all of which were located in FOWOWE'S bedroom. In

3

addition, officers seized $13,590 in cash, a Smith and Wesson .380 caliber semi-automatic pistol with the serial number defaced, a Bryco Arms 9 mm Jennings semi-automatic handgun and a Sony 60" plasma television, all of which were located in RASHAUD HARRELL'S bedroom. At the time of the search, other persons inside the apartment were SASHA N. DALEY, MICHAEL LOVE and KRISTOPHER M. DAVIS.

10. Between December 10, 2004, and January 7, 2005, officers utilized a confidential informant to conduct a controlled purchase of crack cocaine in Champaign, Illinois from AUBREY BUTLER, two controlled purchases of crack cocaine from RASHAUD C. HARRELL in Champaign, Illinois, one controlled purchase of crack cocaine from MAURICE T. RATHER in Champaign, Illinois, and two controlled purchases of crack cocaine from another DAMACIO WALLER, with one buy taking place in Champaign and one buy occurring in Urbana, Illinois. As a result of these controlled purchases of crack cocaine and associated surveillance, officers executed three search warrants on January 8, 2005, at 706 South Locust Street, Apartment #13, Champaign, Illinois, 911 South Locust Street, Apartment #306, Champaign, Illinois and 1806 Cottage Grove, Apartment 304, Urbana, Illinois. Officers located MAURICE RATHER and WALLER at 706 South Locust Street, Apartment #13, Champaign, Illinois at the time of the search. During the search, officers seized $11,260 in cash, packaging materials, cocaine residue, three cellular telephones and a BB pistol. Officers determined that this apartment was rented by a female identified as NICOLE LEWIS.

11. During the search of 911 South Locust Street, Apartment #306, Champaign, Illinois, officers seized 0.4 grams of crack cocaine, a digital scale, an Illinois driver's license issued to AUBREY BUTLER, an Illinois identification card issued to AUBREY BUTLER, receipts containing the names of DAMACIO WALLER and MAURICE RATHER, and glassware which had been used to cook crack cocaine. Officers determined that this apartment had been rented by SHAKEYNA JEANES. SHAKEYNA JEANES had previously been identified as AUBREY BUTLER'S girlfriend.

12. During the search of 1806 Cottage Grove, Apartment #304, Urbana, Illinois, officers located indicia for MARY ANN JOHNSON-WAKAMA and determined that this apartment had been rented by her. In addition, officers determined that two of the vehicles observed during the transactions with BUTLER, RATHER, HARRELL, and WALLER had been rented by MARY ANN JOHNSON-WAKAMA through Enterprise Rent A Car and that another vehicle used during the transactions was also rented through Enterprise Rent A Car.

13. Officers conducted a follow-up interview with MARY ANN JOHNSON-WAKAMA. She advised that she had initially met MAURICE RATHER at a social gathering and that she was introduced to AUBREY BUTLER and DAMACIO WALLER by MAURICE RATHER. MARY ANN JOHNSON-WAKAMA stated she began renting vehicles for MAURICE RATHER approximately two weeks after they met. She further stated that MAURICE RATHER would pay for all the expenses associated with renting the vehicles.

14. Officers also conducted a follow-up interview with NICOLE LEWIS. Officers were aware that NICOLE LEWIS had rented the apartment located at 706 South Locust Street, Apartment #38, Champaign, Illinois in September 2004. NICOLE LEWIS stated she lived in this apartment for approximately one week before moving into an apartment with her sister and cousin. She advised that AUBREY BUTLER and MAURICE RATHER sub-let this apartment from her. NICOLE LEWIS further stated that AUBREY BUTLER paid her $1,006 in cash to cover the first and last month rent and that she would stop by the apartment and pick up the rent money from either AUBREY BUTLER or MAURICE RATHER.

15. As part of the ongoing investigation, officers also targeted DANNY O. CHATMAN, who was believed to be involved in the distribution of cocaine in the campus area of the University of Illinois. Between February 22, 2006, and March 9, 2006, officers utilized a confidential informant to conduct four controlled purchases of crack cocaine in Champaign, Illinois from DANNY CHATMAN. Based on those purchases, on March 10, 2006, officers executed a search warrant on DANNY CHATMAN'S residence located at 606½ East Stoughton, Apartment #1, Champaign, Illinois. During the search, officers seized 188 grams of crack cocaine, 89 grams of powder cocaine, 51 grams of cannabis and $21,044 in cash. Officers also located paperwork containing the names of SASHA DALEY and others.

16. During the search, officers interviewed DANNY CHATMAN. CHATMAN admitted that he was receiving powder cocaine and crack from a subject he

knew as "Mike". DANNY CHATMAN stated "Mike" would bring the powder cocaine and crack to him pre-packaged for sale. DANNY CHATMAN was receiving nine ounces of powder cocaine and crack at a time. DANNY CHATMAN also stated that he had also received one-half kilogram amounts of powder cocaine and crack from "MIKE" on a few occasions. DANNY CHATMAN further advised that SASHA DALEY rented an apartment that was used as a "safe house" and was located at 308 West Green Street, Apartment #D, Urbana, Illinois. CHATMAN later agreed to cooperate with the government and pleaded guilty in the Central District of Illinois to possession with the intent to distribute crack cocaine and was sentenced to a term of imprisonment.

17. On May 24, 2006, officers executed a search warrant at the "safe house" apartment, which was rented by SASHA DALEY, and located at 308 West Green Street, Apartment #D, Urbana, Illinois. Officers confirmed that the apartment was rented in DALEY's name. During the search, officers seized approximately 169 grams of crack cocaine, 341 grams of powder cocaine, packaging material, a digital scale, a Sentry safe, and indicia for NICHOLAS DURHAM. A fingerprint analysis by the Illinois State Police revealed that a latent fingerprint belonging to NICHOLAS DURHAM was contained on the tray of the Sentry safe.

18. On May 24, 2006, officers interviewed SASHA DALEY. DALEY advised officers that she had sub-leased the apartment at 308 West Green Street, Apartment D, Urbana, Illinois to NICHOLAS DURHAM. DALEY stated she was friends with NICHOLAS DURHAM, and he agreed to pay the rent for this apartment until the lease

expired. DALEY admitted that she knew NICHOLAS DURHAM and DANNY CHATMAN were involved with drugs. DALEY also admitted that between the months of October 2005 and January 2006, she transported cash that she knew NICHOLAS DURHAM and another man had made from selling narcotics to Chicago, Illinois. DALEY stated that NICHOLAS DURHAM or the other man would bring the money to her apartment in Champaign when they were ready for her to drive it to Chicago, Illinois.

19. DALEY further advised that she would transport $5,000 to $10,000 at a time to Chicago, Illinois for NICHOLAS DURHAM and the other man, and that she made this trip between five and ten times between October 2005 and January 2006 and was paid $100 for each trip. DALEY advised that she would call a black male identified as "SP" when she got close to the Interstate 57 and 147th Street Exit in Chicago, Illinois, and that SP's cellular telephone number was (773) 458-6123. SASHA DALEY stated she would meet SP in the McDonalds parking lot at this interchange and provide him with the cash. DALEY claimed to not know any other information about SP. Based on information developed during the investigation, officers know that SP is the street name used by RASHAUD HARRELL.

20. Between August 4, 2006, and August 10, 2006, officers utilized a confidential informant to conduct four controlled purchases of crack cocaine from TIMOTHY HARRELL in Champaign, Illinois. On August 10, 2006, officers confirmed that HARRELL was traveling to and from a hotel at 409 West University Avenue,

Urbana, Illinois. During this time period, officers also received information from another confidential informant, who stated that he had been contacted by phone by a person with a Chicago telephone number and that this person had advised that the group was back in business. The informant advised that he understood this to mean that cocaine was available for sale in Champaign and Urbana, Illinois.

21. On August 11, 2006, University of Illinois officers conducted a traffic stop of TIMOTHY HARRELL in Urbana, Illinois. TIMOTHY HARRELL was arrested for driving under the influence of alcohol. Following HARRELL's transport to the local jail facility, officers seized 14.4 grams of crack cocaine and 2.4 grams of powder cocaine from the back seat of the squad car where TIMOTHY HARRELL had been seated.

22. On August 11, 2006, officers executed a search warrant at TIMOTHY HARRELL's hotel room at 409 West University Avenue, Room #116, Urbana, Illinois. During the search, officers seized 115 grams of powder cocaine, 80 grams of crack cocaine, and $2,000 in cash. A fingerprint analysis by the Illinois States Police revealed that a latent fingerprint belonging to RASHAUD HARRELL was located on the bag which contained the powder and crack cocaine seized from TIMOTHY HARRELL's hotel room.

23. Following HARRELL's arrest, officers interviewed him. HARRELL stated that he had brought 9 ounces of cocaine to Champaign for distribution. He further stated that the vehicle he was driving at the time of the traffic stop on August 11, 2006, had been rented by a friend named "CARMEN ". HARRELL stated that he did not

want to discuss the source of the cocaine without first speaking with an attorney. TIMOTHY HARRELL subsequently pleaded guilty to possession of crack cocaine with the intent to distribute in the Central District of Illinois and was sentenced to a term of imprisonment. He has agreed to cooperate with the government with the hope of receiving a lower sentence.

24.     On August 14, 2006, an officer conducted a telephone interview of CARMEN LANGFORD. LANGFORD advised that she was called by a friend she identified as "TIMOTHY" about renting a car so that he could move to Champaign. She advised that she was paid $100 for renting the vehicle but denied any knowledge of HARRELL's involvement in illegal drugs.

25.     On Monday, April 30, 2007, officers interviewed TIMOTHY HARRELL pursuant to his cooperation agreement with the government. During the interview, HARRELL provided the following information;

    HARRELL advised that MAURICE RATHER a/k/a "Wood" a/k/a "Black", and RASHAUD HARRELL, a/k/a "SP", and FOWOWE, a/k/a MELVIN, were involved in the sale of powder cocaine and crack cocaine in Champaign-Urbana, Illinois.

    HARRELL advised that MAURICE had approached HARRELL in April 2006 and asked him if he wanted to make some money. MAURICE sent HARRELL to Champaign in April 2006 and had him stay at the Red Roof Inn. MAURICE provided HARRELL with two sacks that contained crack and powder cocaine. The first bag contained several individual bags of crack cocaine and powder cocaine that each weighed approximately 0.8 grams. HARRELL was instructed to sell these bags for $50 each. The second bag contained several individual bags of crack cocaine and powder cocaine that each weighed approximately 1.8 grams. HARRELL was instructed to sell these bags for $100 each.

    HARRELL stated that MAURICE initially came down to Champaign and showed HARRELL how to sell the cocaine and crack cocaine. MAURICE provided

HARRELL with a cellular telephone. MAURICE would call HARRELL on this cellular telephone and instruct him where to meet customers to sell them either powder cocaine or crack cocaine.

HARRELL stated that on his second trip to Champaign, MAURICE again provided him two bags containing crack cocaine and powder cocaine. HARRELL again stayed at the Red Roof Inn and had the same cellular telephone. MAURICE advised HARRELL that he should have somewhere between $3,000 - $3,500 once all the powder cocaine and crack cocaine was sold. MAURICE paid HARRELL $800 for selling the cocaine on this second trip.

HARRELL advised that MELVIN sent him to Champaign on his third trip. MELVIN's real name was Olaitan FOWOWE. HARRELL met FOWOWE in 2000. FOWOWE was a roommate with HARRELL's cousin, RASHAUD HARRELL, a/k/a "SP", in Champaign-Urbana.

HARRELL advised that he had previously asked FOWOWE and RASHAUD if he could come to Champaign to sell cocaine for them. FOWOWE told HARRELL that their "team" was full at that time. In April 2006, FOWOWE came to HARRELL's residence and asked HARRELL if he wanted to make some money. HARRELL stated yes, and FOWOWE thereafter sent him to Champaign-Urbana with powder and crack cocaine.

HARRELL stated FOWOWE instructed him to meet FOWOWE at the residence of KRISTOPHER DAVIS, a/k/a KD, located in the area of 67th and Ridgeland, Chicago, Illinois. FOWOWE brought 9 ounces of powder and crack cocaine for HARRELL to DAVIS's residence. The crack cocaine was bagged in $50 and $100 sacks, and the powder cocaine was bagged in $150 sacks.

When asked if he thought RASHAUD, FOWOWE, and MAURICE were involved in working together, HARRELL replied "no." HARRELL further stated, however, that RASHAUD began pooling money with FOWOWE to purchase drugs.

HARRELL advised that FOWOWE had a friend who worked for a telephone company. FOWOWE had his friend compile his 300 to 400 customer telephone numbers onto one master list. When FOWOWE was sentenced to the Illinois Department of Corrections in 2005, RASHAUD took control of the business during the summer of 2005. During this time period, RASHAUD was also talking with AUBREY BUTLER, a/k/a "E", who was actively selling cocaine in the Champaign-Urbana area. HARRELL was not sure if RASHAUD was also supplying AUBREY BUTLER.

11

When asked further about the cocaine found at the time of his arrest, HARRELL advised that this cocaine was the same cocaine FOWOWE brought to DAVIS's residence in Chicago. After the cocaine was bagged up, HARRELL took it to his residence but was not comfortable storing it so RASHAUD stored it for HARRELL until FOWOWE made arrangements for HARRELL to travel to Champaign.

FOWOWE made arrangements for HARRELL to meet with a female named CARMEN who was to transport the cocaine to Champaign. RASHAUD drove HARRELL to meet CARMEN so that she could rent a vehicle for HARRELL to drive to Champaign. HARRELL thereafter retrieved the cocaine from RASHAUD, and, at FOWOWE's direction, met with CARMEN again and gave the cocaine to her for transport to Champaign. HARRELL then drove his rental car to Champaign, rented a motel room, and again met with CARMEN and retrieved the cocaine from her. At FOWOWE's direction, HARRELL paid CARMEN money, which was provided by FOWOWE, for her renting HARRELL a car and transporting the cocaine to Champaign. HARRELL then stored the cocaine in his motel room, which was also paid for with money from FOWOWE.

HARRELL advised that FOWOWE provided HARRELL with a cellular telephone and instructed him to answer the phone any time it rang. At first, FOWOWE called HARRELL and instructed him where to meet customers to sell the powder and crack cocaine. These customers were then given the number to his phone and they would call him directly to purchase cocaine.

HARRELL advised that FOWOWE informed him that SASHA, FOWOWE's girlfriend, was going to find HARRELL an apartment in the Champaign-Urbana area. FOWOWE advised HARRELL that once HARRELL was established and all the telephone numbers on the customer list were running in Champaign-Urbana, HARRELL would be selling between 1½ to 2 kilograms of cocaine a month.

26. In October 2006, a Champaign, Illinois police officer involved in this investigation received an unsolicited cellular telephone call from (217) 390-0280 and spoke with a male subject who identified himself as "MELVIN". Officers immediately recognized "MELVIN" to be the alias for FOWOWE. MELVIN advised the officer that his group was back in town and ready for business. MELVIN provided the officer with cellular telephone number (217) 390-0280 and instructed him to call that number if he

needed anything, apparently referring to cocaine. It is unknown how FOWOWE obtained the officer's department-issued cellular telephone number or why MELVIN apparently believed the officer's number was associated with a drug customer.

27. As a result of this unsolicited call, I was assigned to work in an undercover capacity and to attempt to contact the phone number provided by FOWOWE to arrange for undercover purchases of cocaine and crack cocaine in Champaign and Urbana, Illinois (I am hereafter referred to as the UC). Between October 10, 2006, and September 26, 2007, the UC has had ongoing cellular phone contact with FOWOWE and has conducted a total of 54 hand-to-hand purchases of cocaine and crack cocaine in Champaign and Urbana from a total of 16 different persons. During that time period, the UC has been provided with a total of 16 different cellular telephone numbers from FOWOWE and other suspects in this case. FOWOWE has also provided the UC with his own various cellular telephone numbers.

28. On November 13, 2006, the UC called (217) 390-0280 and made contact with a male subject. The UC was instructed to call (217) 766-4154 and speak with "B". The UC was told that "B" would now be taking care of him. The UC was advised to call the (217) 390-0280 number if he had any problems with "B". As described below, "B" was later identified as COREY A. PATTERSON.

29. On November 13, 2006, and December 1, 2006, the UC conducted two hand to hand purchases of crack cocaine, totaling 3.3 grams, from COREY PATTERSON, in exchange for a total of $200. These transactions took place in Urbana,

Illinois. During these transactions, officers observed PATTERSON traveling to and from 2017 South Philo Road, Urbana, Illinois. The UC called (217) 766-4154 to arrange for both transactions.

30. On November 15, 2006, officers conducted a traffic stop of KRISTOPHER M. DAVIS, a/k/a "KD" and COREY PATTERSON. During the stop, officers learned that COREY PATTERSON and KRISTOPHER DAVIS were roomates at 2017 South Philo Road, Apartment 12, Urbana, Illinois.

31. On December 5, 2006, officers executed a search warrant at 2017 South Philo Road, Apartment 12, Urbana, Illinois. COREY PATTERSON was present at the time of the search, and KRISTOPHER DAVIS was observed leaving the residence just prior to the search. During the search, officers seized 32.1 grams of crack cocaine, 50.0 grams of powder cocaine, $1,203 in cash, a stolen .40 caliber Glock semi-automatic pistol, and a Sanyo Cellular telephone (217) 766-4154. At about the same time that day, officers conducted a traffic stop of KRISTOPHER DAVIS and LORENZO SANCHEZ as they traveled northbound on I-57. During the stop, officers seized 3.0 grams of crack cocaine, two plastic bags containing cannabis, and $1,817 in U.S. currency.

32. Following the traffic stop of KRISTOPHER DAVIS, officers interviewed him. During the interview, DAVIS refused to make any direct admissions concerning his role in the organization but did make the following statements concerning his knowledge of it:

DAVIS thought the crack cocaine seized during the traffic stop belonged to COREY PATTERSON, who had received the crack cocaine from either MAURICE T. RATHER or FOWOWE.

DAVIS had been asked by MAURICE RATHER and FOWOWE to sell drugs in the Champaign area, but he refused. They then sent his friend, COREY PATTERSON, down to sell drugs out of his apartment.

DAVIS explained that any drugs in his apartment were being sold at the direction of MAURICE RATHER and/or FOWOWE, and COREY PATTERSON had possibly brought the drugs down from the Chicago area.

DAVIS knew that FOWOWE uses the name "MELVIN" to facilitate the crack cocaine sales in this area.

DAVIS knew that MAURICE RATHER goes by the nickname of "WOOD" to his friends, and "BLACK" to drug customers.

COREY PATTERSON was always on the phone after he came down to sell crack cocaine and powder cocaine for "MELVIN" and "BLACK".

DAVIS observed COREY PATTERSON conduct three or four deliveries of cocaine or crack cocaine, but thought that over the previous three and one-half weeks, PATTERSON had conducted ten to thirty deals each day.

COREY PATTERSON had brought approximately one ounce of crack cocaine to DAVIS's apartment to sell, but had sold substantially more than that.

MAURICE RATHER is a friend of AUBREY BUTLER who recently got sentenced to federal prison for cocaine distribution in the Champaign area.

SASHA DALEY is the girlfriend of FOWOWE, and handles the Chicago "dope" phone at night while FOWOWE is in custody.

MAURICE RATHER and FOWOWE utilize a female named "Liz" or "LISH" in Champaign to store drugs and money.

DAVIS stated that other people who have worked for FOWOWE in the Champaign area include TIMOTHY HARRELL and DANNY CHATMAN.

33.     COREY PATTERSON pleaded guilty in the Central District of Illinois to possession with the intent to distribute crack cocaine and possession of a firearm in furtherance of a drug trafficking crime and was sentenced to a term of imprisonment. He has agreed to cooperate with the government with the hope of receiving a sentence reduction.

34.     On July 30, 2007, officers interviewd COREY PATTERSON. COREY PATTERSON advised officers that he and KRISTOPHER DAVIS had been friends for several years. DAVIS called PATTERSON while he was living in Chicago, Illinois and asked him if he wanted to come to Champaign-Urbana, Illinois to make some money. PATTERSON initially believed DAVIS meant selling cannabis, but he later learned that DAVIS was selling cocaine and crack cocaine. DAVIS explained to PATTERSON that PATTERSON would make $10 for every $50 bag he sold and $20 for every $100 bag he sold, and that PATTERSON could reside with DAVIS in Champaign, Illinois.

35.     According to PATTERSON, KRISTOPHER DAVIS introduced PATTERSON to FOWOWE, RASHAUD HARRELL and MAURICE RATHER. PATTERSON advised that KRISTPOHER DAVIS described FOWOWE as the "six figure guy". PATTERSON first met with FOWOWE and MAURICE RATHER in the area of 79th Street in Chicago, Illinois.

36.     PATTERSON further advised that FOWOWE and MAURICE RATHER provided him with a cellular telephone to use in Champaign-Urbana, Illinois. The first cellular telephone number he was given to reach FOWOWE was (708) 228-3201. The

cellular telephone used to conduct drug sales had three stored cellular telephone numbers listed under the name "MELVIN". PATTERSON advised that FOWOWE uses the street name of "MELVIN". PATTERSON recognized the three cellular telephone numbers (217) 390-0280, (773) 209-5647 and (708) 228-3201 as FOWOWE's cellular telephone numbers. PATTERSON advised that he used all three of these numbers to contact FOWOWE and would scroll through these three cellular telephone numbers when calling FOWOWE until he answered one of the phones.

37. COREY PATTERSON further stated he had been to FOWOWE's apartment located in Calumet City, Illinois. This apartment was located close to River Oaks Mall in Calumet City, Illinois. Officers know from surveillance that the apartment COREY PATTERSON was speaking about is the apartment complex where FOWOWE resides when he is not in work release from the Illinois Department of Corrections. COREY PATTERSON also advised officers that he was aware that FOWOWE was currently serving a work release sentence and is still able to distribute large amounts of cocaine.

38. COREY PATTERSON further advised that he had also been to RASHAUD HARRELL'S residence located in the area of 32nd Street and King Drive, Chicago, Illinois. Officers showed PATTERSON a photograph of FOWOWE with the identifiers hidden. PATTERSON identified the subject in the photograph as FOWOWE. Officers showed COREY PATTERSON a photograph of RASHAUD HARRELL with the identifiers hidden. PATTERSON identified the subject in the photograph as RASHAUD

HARREL, a/k/a "SP" or "ESPY". Officers showed PATTERSON a photograph of MAURICE RATHER with the identifiers hidden. PATTERSON identified the subject in the photograph as MAURICE RATHER, a/k/a "Black" a/k/a "Wood". Officers showed PATTERSON a photograph of SASHA DALEY with the identifiers hidden. PATTERSON identified her as SASHA DALEY, FOWOWE's girlfriend.

Further, Affiant sayeth not.

Matthew D. Henson, Task Force Agent
Drug Enforcement Administration

Subscribed and sworn to before me this
___5___ day of December 2007.

s/David G. Bernthal
_____
DAVID G. BERNTHAL
UNITED STATES MAGISTRATE JUDGE